STATE OF CONNECTICUT v. CAESAR TELESCA
(11738)

STATE OF CONNECTICUT v. STEVEN BOUCINO
(11857)
(11858)

HEALEY, SHEA, DANNEHY, SANTANIELLO and DEAN, Js.

Argued February 6—decision released May 13, 1986

*Timothy C. Moynahan,* with whom, on the brief, was *John P. McKeon,* for the appellant (defendant in the first case).

*John F. Kavanewsky, Jr.,* for the appellant (defendant in the second and third cases).

*Richard D. Arconti,* special assistant state's attorney, for the appellee (state).

SHEA, J. The defendants, Caesar Telesca and Steven Boucino, have appealed from their convictions upon conditional pleas of nolo contendere to various charges deriving from evidence obtained through the use of a court-ordered wiretap.[1] The defendants have raised two

---

[1] Boucino was charged with two counts of possession of narcotics with intent to sell, in violation of General Statutes (Rev. to 1979) § 19-480 (a), and with intentionally aiding another in the sale of narcotics in violation of General Statutes (Rev. to 1979) § 19-480 (a) and § 53a-8. Telesca was charged with intentionally aiding another in the sale of narcotics, in violation of General Statutes (Rev. to 1979) §§ 19-480 (a) and 53a-8; possession of less than four ounces of marijuana and of amphetamines, in violation of General Statutes (Rev. to 1979) § 19-481 (c); possession of cocaine with intent

claims of error: (1) the denial of their motions to suppress the evidence culled from the intercepted wire communications; and (2) the denial of their motions to open the suppression hearing on the ground that they had made a substantial preliminary showing that essential portions of the wiretap affidavit were false.[2] We find error in the trial court's, *Fishman, J.,* refusal to open the suppression hearing. Accordingly, we remand the case to the trial court with direction to conduct further proceedings in accordance with this opinion.

On April 1, 1980, the state's attorney submitted an application, pursuant to General Statutes § 54-41b, to a judicial wiretap panel for a wiretap of a telephone in the apartment of Karen Hyde, with whom the defendant Boucino was known to be living, in Naugatuck. The three judge panel approved the wiretap for a period from April 1 through and including April 10, 1980. During the wiretap period certain conversations between Telesca and Boucino were intercepted. Based on these conversations, the police obtained various search warrants, including one enabling them to conduct a search of Telesca's home. While at the Telesca residence, the police observed Boucino exiting the premises. As Boucino entered his car, the officers executed a search warrant for his person and discovered money and numerous packets of cocaine. A search of

to sell, in violation of General Statutes (Rev. to 1979) § 19-480 (a); illegal possession of an explosive, in violation of General Statues (Rev. to 1979) § 29-88; illegal storing of an explosive, in violation of General Statutes (Rev. to 1979) § 29-89; theft of a firearm, in violation of General Statutes § 53a-212; and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134.

[2] Because of our disposition of the defendants' second claim on appeal it is unnecessary to consider an additional claim which had been briefed, involving the trial court's quashing of a subpoena served upon Joan Wilcox, a witness needed for the hearing.

the Telesca residence yielded marijuana, cocaine, amphetamines, $8000 in cash and drug paraphernalia. Pursuant to a warrant, the police subsequently searched the apartment where Boucino resided, the same apartment which was the subject of the wiretap, and discovered 1.68 ounces of white powder containing cocaine.

The wiretap application, which directly led to the search and the seizure of evidence, was based solely on the affidavit of inspector Joseph Lawlor. The affidavit indicated that an informant had been at the apartment building where Boucino resided and had heard several conversations involving Boucino. Some of the conversations contained references to "delivery," "coke," "morphine," "private flights," "shipment," "pilot," and money in a "bank vault." The informant also overheard Hyde say, presumably to Boucino, "keep this up and you are going back to jail." The affidavit also stated that numerous people visited Boucino's apartment, typically ten minutes after an incoming call had been received, and that the informant had overheard Boucino planning a bank robbery. According to the affidavit, the informant provided the license plate number of one vehicle belonging to a man who visited Boucino's building on one occasion and of another vehicle belonging to a frequent visitor of the building. In order to verify the informant's report, police investigation of the plate numbers established that one car was registered to the wife of a convicted bank robber, while the other was registered to a man the police had recently observed watching a local bank.

Challenging both the sufficiency and veracity of Lawlor's affidavit the defendants filed pretrial motions to suppress the contents of the intercepted communications, and the evidence derived therefrom, pursuant

to General Statutes § 54-41m.[3] At an evidentiary hearing, conducted on March 25, 1981, Lawlor's affidavit in support of the wiretap was introduced into evidence. He also testified that although the informant was known to be reliable, he was unaware whether the informant had ever furnished information to the police in the past that had led to an arrest or a conviction.

The defendants then informed the court of their desire to pursue the adequacy of the affidavit beyond its allegations and requested an evidentiary hearing under *Franks* v. *Delaware,* 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The court denied the motion because the defendants failed to make the requisite showing of deliberate falsehood in the affidavit. The defendants filed a supplemental motion to suppress the contents of the intercepted communications on May 1, 1981, and submitted counteraffidavits in an effort to bolster their earlier unsuccessful *Franks* claim. On July 3, 1981, the trial court, *Fishman, J.,* denied the defendants' motion to suppress, concluding

---

[3] "General Statutes Sec. 54-41m. MOTION TO SUPPRESS. Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the state of Connecticut, or of a political subdivision thereof, may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted under the provisions of this chapter; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion, in which case such motion may be made at any time during the course of such trial, hearing or proceeding. If the motion is granted, the contents of the intercepted wire communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter and shall not be received in evidence in any such trial, hearing or proceeding. The panel, upon the filing of such motion by the aggrieved person, shall make available to the aggrieved person or his counsel for inspection the intercepted communication and evidence derived therefrom."

that the affidavit met constitutional requirements as enunciated in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and that the preliminary showing necessary under *Franks* v. *Delaware,* supra, was not made by the defendants.

Jury selection in the joint trial of the two defendants began in May, 1982. On May 13, while jury selection was still in progress, the defendants filed motions to open the suppression hearings on the basis of a recently obtained sixty-seven page sworn statement of Joan Wilcox, who the defendants suspected was the informant named in the Lawlor affidavit. The defendants claimed that this statement directly challenged the truth of Lawlor's affidavit and requested a *Franks* hearing to demonstrate conscious falsehood in the affidavit. The motion was denied by the court on May 24, 1982, on the basis that the defendants, even in light of the Wilcox statement, did not make the required preliminary showing under *Franks* because they did not "conclusively establish" that she was the informant.

The trial began on June 8, 1982, and continued until July 20, when the court declared a mistrial for the purpose of allowing the defendants to enter conditional pleas of nolo contendere pursuant to Public Acts 1982, No. 82-17.[4] On the same date, the defendants entered

---

[4] Public Acts 1982, No. 82-17, presently General Statutes § 54-94a, provided: "AN ACT CONCERNING A CONDITIONAL PLEA OF NOLO CONTENDERE. (NEW) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of non jurisdictional defects in the criminal prosecution."

conditional pleas of nolo contendere to all charges, specifically reserving the right to appeal the court's denial of their motions to suppress. General Statutes § 54-94a; *State* v. *Madera,* 198 Conn. 92, 98–99, 503 A.2d 136 (1985). On October 4, 1982, Boucino and Telesca were sentenced to effective terms of imprisonment of not less than five nor more than six years, and not less than two nor more than four years, respectively.

I

The defendants claim that the trial court erred in refusing to grant their motions to suppress the evidence obtained as a product of the court-ordered wiretap. They level their attack on the sufficiency of Lawlor's affidavit, claiming that the affidavit was inadequate because it did not indicate the unavailability of other less intrusive investigative techniques as required by General Statutes § 54-41c (6) and that it failed to establish probable cause necessary to authorize the wiretap under General Statutes (Rev. to 1979) § 54-41c (12).[5]

A

The defendants claim that the affidavit failed to meet the requirements of General Statutes § 54-41c (6), which provides that an application for a wiretap should include "a full and complete statement of facts show-

[5] General Statutes (Rev. to 1979) § 54-41c provides in relevant part: "INFORMATION IN APPLICATION. Each application for an order authorizing the interception of a wire communication shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information . . . (6) a full and complete statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ . . . (12) . . . If the facts establishing such probable cause are derived in whole or part from the statements of persons other than the applicant, the sources of such information and belief shall be either disclosed or described, and the application shall contain facts establishing the existence and reliability of the informant, or the reliability of the information supplied by him. The application shall also state the basis of the informant's knowledge or belief."

ing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." See General Statutes § 54-41d (4). The state claims, however, that the affidavit satisfied this requirement by stating: "The use of physical surveillance and undercover officers is too dangerous to employ as Boucino and his associates have proved wary of surveillance and in the past it has proven impossible to make direct undercover officer buys from Boucino. The use of search warrants will not reveal the means and principals making shipments by pilot to Boucino and supplying cocaine and morphine. With respect to the projected robbery the only technique which will give more definite information concerning the projected robbery is by use of electronic surveillance over the telephone in Boucino's apartment."

The statutory requirement of § 54-41c (6) is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States* v. *Kahn,* 415 U.S. 143, 153 n.12, 94 S. Ct. 977, 39 L. Ed. 2d 225 (1974); see *United States* v. *Giordano,* 416 U.S. 505, 515, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974). "Without question, it would be in some sense more efficient to wiretap whenever a telephone was used to facilitate the commission of a crime. But the statutory requirement that other investigative procedures be exhausted before wiretapping reflects a [legislative] judgment that the cost of such efficiency in terms of privacy interests is too high. See *United States* v. *Kalustian,* 529 F.2d 585, 589 (9th Cir. 1975)." *United States* v. *Lilla,* 699 F.2d 99, 105 n.7 (2d Cir. 1983). "[Wiretap] procedures [are] not to be routinely employed as the initial step in a criminal investigation." *United States* v. *Hinton,* 543 F.2d 1002, 1011

(2d Cir.), cert. denied sub nom. *Canter* v. *United States,* 429 U.S. 980, 97 S. Ct. 493, 50 L. Ed. 2d 589 (1976) and cert. denied sub nom. *Bates* v. *United States,* 429 U.S. 1066, 97 S. Ct. 796, 50 L. Ed. 2d 783 (1977). The statute does not, however, prohibit electronic surveillance until all other alternative methods of investigation have actually been exhausted. Id.

We point out that the statutory requirement of "a full and complete statement" demands more than a bare conclusory statement that normal investigative techniques are generally unproductive in dealing with drug operations of this type. See *United States* v. *DiMuro,* 540 F.2d 503 (1st Cir. 1976); *United States* v. *Kalustian,* supra. The affidavit in the present case, however, does not rest on such assertions alone. Lawlor stated, although without specificity, that the use of other conventional investigative methods had been ineffective in the past as "Boucino and his associates have proved wary of surveillance" and, further, that undercover agents have been unable to make direct buys from him. Lawlor also asserted that in light of the peculiar nature of the activity it would be fruitless to utilize search warrants because they would not lead to evidence of the "principals" involved in the operation. It appears from Lawlor's affidavit that the state police had conducted prior investigations of Boucino and were still unable to secure the evidence necessary to prosecute him. This, then, is not a situation where the police employed wiretapping as a routine investigative tool. Nor is it a situation where the police relied solely upon the ineffectiveness of alternate investigatory procedures in drug prosecutions in general. A practical analysis of the circumstances of this case clearly indicates that normal police procedures were unlikely to reveal evidence against the high echelon of the operation. *United States* v. *Messersmith,* 692 F.2d 1315, 1317–18 (11th Cir. 1982). Although the factual allega-

tions of the affidavit could have been more specific and substantial, we conclude that the affidavit adequately set forth the basis for concluding that normal investigative procedures had been exhausted or would be unlikely to produce essential evidence. The trial court correctly held that the requirements of § 54-41c (6) had been satisfied.

## B

We next turn to the defendants' claim that the evidence obtained from the intercepted wire communications should have been suppressed because Lawlor's affidavit was insufficient to establish probable cause for the issuance of the wiretap order. Our wiretap statutes permit the issuance of a wiretap order only when it can be determined from the facts stated by the affiant that probable cause exists as set forth in General Statutes § 54-41d.[6] An application must contain certain information as required by General Statutes § 54-41c. The defendants claim that Lawlor's affidavit failed to satisfy the requirements of General Statutes (Rev. to 1979) § 54-41c (12), which provides in part: "[A]llegations of fact in the application may be based

[6] "General Statutes Sec. 54-41d. ISSUANCE OF ORDER. Upon such application the panel of judges, by unanimous vote, may enter an ex parte order authorizing the interception of wire communications within the state of Connecticut, if the panel determines on the basis of the facts submitted by the applicant that there is probable cause to believe that: (1) An individual has committed or is committing an offense enumerated in section 54-41b; (2) particular communications will constitute material evidence that an offense enumerated in section 54-41b has been committed or is being committed or will materially aid in the apprehension of the perpetrator of such offense; (3) such communications are not otherwise privileged; (4) other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ; (5) the facilities from which, or the place where the wire communications are to be intercepted are being used, or are about to be used in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such individual; (6) such facilities or places are not those described in section 54-41h; (7) if the facilities

either upon the personal knowledge of the applicant or upon information and belief. If the applicant personally knows the facts alleged, it must be so stated. If the facts establishing such probable cause are derived in whole or part from the statements of persons other than the applicant, the sources of such information and belief shall be either disclosed or described, and the application shall contain facts establishing the existence and reliability of the informant, or the reliability of the information supplied by him. The application shall also state the basis of the informant's knowledge or belief."

As we recently have recognized, this legislatively mandated standard has striking similarities to the *Aguilar-Spinelli* test for the sufficiency of search warrant affidavits. *State* v. *Ross,* 194 Conn. 447, 463, 481 A.2d 730 (1984).[7]

Under the *Aguilar-Spinelli* analysis, the wiretap panel that issues the wiretap order must be " 'informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credi-

from which a wire communication is to be intercepted are public, a special need exists to intercept wire communications over such facilities; (8) the investigative officers to be authorized to intercept the wire communication are qualified by training and experience to execute the interception sought; (9) not more than thirty-four orders authorizing interception have been previously issued by all panels in the calendar year in which the application is made, except that upon a showing of an emergency situation in which the commission of an offense enumerated in section 54-41b may result in imminent peril to public health, safety or welfare, such panel may issue additional orders authorizing interception.

[7] Because General Statutes (Rev. to 1979) § 51-41c (12) incorporates the standards enunciated in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), it is unnecessary to discuss the effect, if any, that *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983), has on the probable cause determination. See *State* v. *Kimbro,* 197 Conn. 219, 236 n.17, 496 A.2d 498 (1985).

ble, or (b) that his information was reliable.' " *State* v. *Delmonaco*, 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984); *State* v. *Daley*, 189 Conn. 717, 720–21, 458 A.2d 1147 (1983); *State* v. *Bember*, 183 Conn. 394, 410–11, 439 A.2d 387 (1981); *State* v. *Jackson*, 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).

The defendants claim that the Lawlor affidavit fails to satisfy both prongs of the *Aguilar-Spinelli* test. They argue that the affidavit neither provides the wiretap panel with sufficient underlying circumstances from which the informant obtained his information nor apprises the panel of the affiant's basis for his conclusion that the informant was either credible or reliable.

The first prong of the applicable standard requires that the affidavit set forth the basis of the informer's knowledge. "If a [judicial wiretap panel] were to authorize a [wiretap] based solely on allegations provided by an otherwise credible person without requiring a showing of the underlying circumstances that serve as a basis for the informant's allegations, the informant would usurp the [panel's] role as the finder of probable cause." *State* v. *Delmonaco*, supra, 340. Upon careful examination of the affidavit we conclude that it adequately supports the trial court's conclusion that the "basis of knowledge" requirement was satisfied. The affidavit states that the informant personally heard numerous conversations involving Boucino regarding criminal activity. These conversations involved references to jargon singularly associated with illegal narcotics operations. The informant identified license plates of vehicles owned by individuals connected with bank robberies and observed numerous individuals enter and leave the apartment soon after incoming phone calls to Boucino's apartment. The detailed description of these underlying circumstances, estab-

lishes that the informant did not rely on "a casual rumor circulating in the underworld or an accusation based merely on [Boucino's] general reputation." *Spinelli* v. *United States,* supra, 589. The information in the affidavit appears to have been based solely on the personal observations of the informant and, therefore, does not involve any of the double-hearsay problems present in the affidavit in *State* v. *Ross,* supra, 464–65.

The wiretap affidavit also satisfied the "reliability" prong of *Aguilar-Spinelli.* "An affiant need not recite the precise factors on which he judged his informant credible or reliable. . . . If they are apparent to the common-sense reader of the affidavit—whether by necessary implication or recital—it is enough." *State* v. *Jackson,* supra, 452–53. The affidavit described the informant as a person "of known reliability, a steady worker with a reputation for truthfulness who has no criminal record and is not one engaged in criminal activities, who was reporting crimes as a citizen to the police but desired the informant's identity not be revealed to others." This assertion is more than "a bare statement by an affiant that he believed the informant to be truthful." *United States* v. *Harris,* 403 U.S. 573, 579, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). According to the wiretap affidavit, the informant was an ordinary citizen not involved in criminal activity. Such a "citizen-informer" is more deserving of reliability than the informant from the criminal milieu. Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3. "[T]he ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. 'The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals.' " *United States* v. *Harris,* supra, 599 (Harlan, J., dissenting). The affi-

ant's independent information that Boucino had a prior drug offense conviction; *State* v. *Kimbro,* 197 Conn. 219, 232, 496 A.2d 498 (1985); coupled with the corroboration of the license plate numbers provided by the informant, further buttresses the conclusion of reliability. The trial court properly concluded that "there was a substantial basis for the wiretap panel's finding of probable cause in accordance with our statutes." *State* v. *Ross,* supra, 459.

## II

Our conclusion that the affidavit was facially valid requires that we address the defendants' remaining claim that the trial court erred in denying their motions to open the suppression hearing even though they had made a substantial preliminary showing that the affidavit contained false information necessary to a finding of probable cause.

In *Franks* v. *Delaware,* supra, 171, the United States Supreme Court held that the truth of an affidavit supporting a search warrant may be challenged at an evidentiary hearing when a satisfactory preliminary showing of deliberate falsity or reckless disregard of the truth on the part of the affiant has been made. *State* v. *Morrill,* 197 Conn. 507, 543, 498 A.2d 76 (1985); *State* v. *Delmonaco,* supra, 334–35; *State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Just,* 185 Conn. 339, 358, 441 A.2d 98 (1981); see *Rugendorf* v. *United States,* 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887 (1964). If at such a hearing the allegation of falsity is established by a preponderance of the evidence, and the remaining content.of the affidavit is not independently sufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent

as when probable cause is lacking on the face of the affidavit. *Franks* v. *Delaware,* supra, 171–72.

This court has not previously had occasion to apply the *Franks* rule to wiretap affidavits filed pursuant to General Statutes § 54-41b. Because our statutes require the wiretap panel to consider the same factors that a neutral judicial officer must evaluate when determining probable cause to issue a search warrant; see part I, B of this opinion; the reasoning of *Franks* applies in this context as well. *United States* v. *Ippolito,* 774 F.2d 1482, 1485 (9th Cir. 1985); *United States* v. *Payden,* 613 F. Sup. 800 (S.D.N.Y. 1985). Since wiretap orders are issued at ex parte hearings and often under emergency conditions, subsequent review is necessary to prevent police misconduct in the preparation of the affidavit. See *United States* v. *Kiser,* 716 F.2d 1268, 1270 (9th Cir. 1983). A prohibition on impeachment of the veracity of the wiretap affidavit would clearly "denude the probable-cause requirement of all real meaning." *Franks* v. *Delaware,* supra, 168.

The defendants contend that the sixty-seven page Wilcox affidavit provided the necessary preliminary showing of falsity necessary to entitle them to a *Franks* hearing. In her affidavit, Wilcox stated that she was a resident of the same apartment complex where the defendant Boucino resided from January–April, 1980; she occupied the apartment adjacent to the unit occupied by Boucino; and she had spoken to inspector Lawlor concerning Boucino and had informed him that she had heard Hyde say "keep this up and you are going back to jail." Other sections of the Wilcox affidavit contained information materially different from that attributed to the informant by Lawlor. For example, Wilcox stated that she told Lawlor that she was unable to recognize Boucino's voice and that she had never heard anything concerning a bank robbery or cocaine

operations. She further stated that she had never overheard phone conversations nor informed Lawlor of any license plate numbers.

The defendants in this case were faced with a difficult burden of making the preliminary showing prescribed by *Franks*. Where the informant is named in the affidavit, the defendant has the opportunity to investigate and may be able to interview him regarding the affiant's veracity. The defendant thus may have access to information necessary to make a "substantial preliminary showing" of falsity required for a *Franks* hearing to determine probable cause. Where the affidavit does not disclose the name of the informant, and his identity is not otherwise obtainable, as in this instance, it would ordinarily be impossible for a defendant to satisfy the preliminary showing requirement for a *Franks* hearing if it is necessary to demonstrate "conclusively," as the trial court held, that a witness offered to impeach the veracity of the affiant was in fact the informant. Clearly the state has a strong public interest in protecting the identity of confidential informants in order to encourage the flow of information necessary in criminal prosecutions. *Roviaro* v. *United States,* 353 U.S. 53, 60–61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957); *State* v. *McDaniel,* 176 Conn. 131, 133, 405 A.2d 68 (1978); *State* v. *Harris,* 159 Conn. 521, 527–29, 271 A.2d 74 (1970), cert. denied, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). This public interest, however, must, in certain circumstances, yield to the defendant's right to present a defense. *Roviaro* v. *United States,* supra, 61; see *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62, reh. denied, 386 U.S. 1042, 87 S. Ct. 1474, 18 L. Ed. 2d 616 (1967). The Wilcox affidavit presents reasonable grounds to believe that she was the informant and, if she was, casts serious doubt upon the veracity of material representations made by Lawlor in the wiretap application. If

it was, therefore, essential to determine more fully whether Wilcox was the informant in order for the defendants to become entitled to a *Franks* hearing, it was incumbent on the court to make that determination under the circumstances of this case.

Our view that an evidentiary hearing is necessary to determine whether Wilcox was the informant does not mandate, however, that the informant's identity be disclosed if it is determined that Wilcox was not the informant. Because the disclosure of any other possible informant's identity is not essential to resolve this issue, it appears that such a hearing need not be conducted ex parte or in camera as in cases where such a disclosure was necessary. *United States* v. *Kiser,* supra, 1273; *United States* v. *Manley,* 632 F.2d 978, 986 (2d Cir. 1980); *United States* v. *Alexander,* 559 F.2d 1339, 1344 (5th Cir. 1977); *United States* v. *Anderson,* 509 F.2d 724, 729 (9th Cir. 1974), cert. denied, 420 U.S. 910, 95 S. Ct. 831, 42 L. Ed. 2d 840 (1975); *United States* v. *Hurse,* 453 F.2d 128, 130–31 (8th Cir. 1971). At the hearing the trial court must require the state to disclose whether Wilcox was the informant. If the court determines that the informant is not Wilcox there will be no need to conduct a complete *Franks* hearing. As the defendants conceded at oral argument, they have not, in the absence of a finding that Wilcox is the informant, made a sufficient challenge to the veracity of the affidavit. In that case, the present judgment may stand against the defendants on all charges.

In light of our conclusion that the Wilcox affidavit casts serious doubt upon the veracity of the representations made by Lawlor in the wiretap affidavit, and because the wiretap application was based solely on those representations, the defendants have clearly made the requisite preliminary showing of falsity in order to entitle them to a *Franks* hearing if they have correctly identified the informant. See *United States*

v. *McDonald,* 723 F.2d 1288, 1294 (7th Cir. 1983); *United States* v. *Southard,* 700 F.2d 1, 11 (1st Cir.), cert. denied sub nom. *Ferris* v. *United States,* 464 U.S. 823, 104 S. Ct. 89, 78 L. Ed. 2d 97 (1983); *United States* v. *Licavoli,* 604 F.2d 613, 621 (9th Cir. 1979), cert. denied, 446 U.S. 935, 100 S. Ct. 2151, 64 L. Ed. 2d. 787 (1980); *United States* v. *Moore,* 522 F.2d 1068, 1073 (9th Cir. 1975), cert. denied, 423 U.S. 1049, 96 S. Ct. 775, 46 L. Ed. 2d 637 (1976). It will then be their burden to establish by a preponderance of the evidence either that Lawlor deliberately falsified information in preparing the wiretap affidavit or prepared the affidavit with reckless disregard for the truth. *Franks* v. *Delaware,* supra, 156. At this hearing the state would be free to assert the contentions, made in its brief, that the Wilcox affidavit was coerced or otherwise incredible. We express no opinion as to the merit of either of these claims.

If the court should find that the Lawlor affidavit contains material falsehoods substantially affecting the basis for a finding of probable cause that have been deliberately or recklessly made, the judgment must be set aside and the motions to suppress must be granted. If the court reaches the contrary conclusion, the judgment may remain undisturbed.

We remand the case for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.