STATE OF CONNECTICUT *v.* THOMAS SPEERS
(6385)

STATE OF CONNECTICUT *v.* WILLIAM GEORGE
(6738)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued November 18, 1988—decision released March 7, 1989

*Timothy C. Moynahan,* with whom, on the brief, were *John M. Loconsolo, Jr.,* and *Theresa M. Dalton,* for the appellant (defendant in the first case).

*Frederick D. Paoletti, Jr.,* with whom, on the brief, were *John M. Loconsolo, Jr., Timothy C. Moynahan* and *Theresa M. Dalton,* for the appellant (defendant in the second case).

*James K. Robertson, Jr.,* special assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellee (state).

NORCOTT, J. The defendants, Thomas W. Speers and William George,[1] appeal from judgments of conviction following their conditional pleas of nolo contendere[2] to the crimes of gambling and professional gambling in violation of General Statutes § 53-278b (a) and (b)[3] and

[1] The same criminal investigation led to the arrests of both defendants. Their appeals were argued together and raise the same claims of error.

[2] General Statutes § 54-94a and Practice Book § 4003 (a) authorize defendants to condition their entry of a plea of nolo contendere on the right to take an appeal from the trial court's denial of a motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss. The issue before this court is "limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss." Practice Book § 4003 (a).

[3] "[General Statutes] Sec. 53-278b. GAMBLING; PROFESSIONAL GAMBLING; PENALTIES. (a) Any person who engages in gambling, or solicits or induces another to engage in gambling, or is present when another person or persons are engaged in gambling, shall be guilty of a class B misdemeanor; provided natural persons shall be exempt from prosecution and punishment

transmitting or receiving gambling information by telephone in violation of General Statutes § 53-278d (a).[4] They claim the trial court erred in denying their motion to suppress evidence obtained through a wiretap investigation, and their motion to dismiss the charges against them, (1) by determining that the defendants did not prove that allegedly false statements and misleading omissions, made by an affiant to obtain approval of a wiretap application, voided the basis for probable cause to issue the arrest warrant, and (2) by refusing to admit into evidence, during a *Franks* hearing,[5] documents concerning the allegedly false information provided by the warrant application affiant, Lieutenant Thomas R. Brown of the Waterbury police department. They also claim that their inability to cross-examine Brown constitutes a violation of their constitutional right to confrontation. We find no error.

The record reveals the following facts. On March 15, 1985, the state's attorney for the judicial district of Waterbury applied to a panel of judges, by authority of General Statutes § 54-41b, for an order authorizing interception of the telephonic communications of the defendants. The application was accompanied by the supporting affidavits of Connecticut state police Detective Ronald W. Kamens and Brown, alleging that the

---

under this subsection for any game, wager or transaction which is incidental to a bona fide social relationship, is participated in by natural persons only and in which no person is participating, directly or indirectly, in professional gambling.

"(b) Any person who engages in professional gambling shall be guilty of a class A misdemeanor."

[4] General Statutes § 53-278d provides in pertinent part: "(a) Any person who knowingly transmits or receives gambling information by telephone, telegraph, radio, semaphore, or other means, or knowingly installs or maintains equipment for the transmission or receipt of gambling information, shall be guilty of a class A misdemeanor."

[5] *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

defendants were engaged in professional gambling. By order dated March 19, 1985, the three judge panel authorized a limited telephonic interception for a period of fifteen days. On the basis of information obtained through the wiretap, the defendants were arrested pursuant to warrants issued on May 2, 1985.

Following the defendants' arrests, Brown was arrested and charged with perjury for allegedly falsely stating in the affidavit in support of the wiretap application that the informant who had supplied him with information about the defendants' illegal activities had previously given him information that had resulted in two arrests and two convictions. The defendants filed a motion to suppress the evidence obtained through the wiretap and a motion to dismiss the charges against them. They claimed that the arrest warrant was invalid because Brown's statement regarding the informant was false and intentionally or recklessly made and because he had omitted significant facts from the affidavit. On July 21, 1987, the trial court granted the defendants' motion for an evidentiary hearing as provided by *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and *State* v. *Dolphin,* 195 Conn. 444, 456–57, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). At the conclusion of the hearing, the court denied the defendants' motions to suppress and dismiss, concluding that the defendants had failed to prove, by a preponderance of the evidence, that Brown's statement was false and was made intentionally or recklessly or that any omissions materially affected the accuracy of the affidavit. The court also concluded that the defendants had failed to prove that the warrant application, even when viewed without the challenged statement by Brown, and considering the alleged omissions, was

insufficient to establish probable cause.[6] The defendants withdrew their pleas of not guilty, pleaded nolo contendere, and appealed the trial court's rulings.

I

The defendants first claim that the trial court erred in determining that they had failed to prove that Brown's statement regarding the informant was false and made intentionally or recklessly, that there were material omissions and that there was insufficient other information to support the approval of the wiretap request.

After the trial court granted the defendants a *Franks* hearing, it became the defendants' burden to establish, by a preponderance of the evidence, either that Brown deliberately falsified information contained in the wiretap affidavit or prepared the affidavit with reckless disregard for the truth, and that any intentionally false statements or material omissions were necessary to a finding of probable cause. See *State* v. *Telesca,* 199 Conn. 591, 608, 508 A.2d 1367 (1986).

Brown, exercising his privilege against compulsory self-incrimination, refused to testify at the *Franks* hearing. The defendants, in attempting to prove that the statement by Brown was false or recklessly made, prin-

---

[6] In their briefs, the defendants argue that the trial court's actions in granting the *Franks* hearing, and then ultimately deciding that Brown's alleged false statement was not necessary for a finding of probable cause, are contradictory. Although it is true that suppression hearings under *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), are commonly granted when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is *necessary to the finding of probable cause*"; (emphasis added) id., 155–56; it is also true that in this case the trial court granted the hearing expressly reserving any determination of whether the challenged statement was false *and* whether the statement substantially affected the basis for a finding of probable cause.

cipally depended upon the testimony of the informant, Robert "Gus" Fennessy, from whom Brown had received information about the defendants' gambling. Fennessy testified that, inter alia, he had not served as an informant against others in the past and that no information that he may have passed on to police had ever contributed to arrests and convictions. The court, however, in its memorandum of decision, discredited Fennessy's testimony and, relying upon a number of other factors, elicited through testimony at the hearing, held that the defendants had failed to prove that it was more likely than not that Brown's statement was false and intentionally or recklessly made.

In a suppression hearing, the trial court serves as the trier of fact, and it is axiomatic that " '[t]he trier of the facts determines with finality the credibility of witnesses and the weight to be accorded their testimony. "We cannot retry the facts or pass upon the credibility of the witnesses." ' State v. Penland, 174 Conn. 153, 157–58, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978), [quoting Johnson v. Flammia, 169 Conn. 491, 497, 363 A.2d 1048 (1975).]" State v. Kimbro, 197 Conn. 219, 222–23, 496 A.2d 498 (1985). Our role as a reviewing court is limited to deciding whether the trial court's decision was clearly erroneous in light of the evidence in the whole record. Practice Book § 4061; State v. Enright, 17 Conn. App. 142, 146, 550 A.2d 1095 (1988).

A review of the record and transcript of testimony given by the witnesses called at the Franks hearing reveals an adequate basis for the trial court's decision. Detective Kamens, the other affiant in the wiretap application, testified that Brown had told him that Fennessy's testimony had led to two arrests and convictions in the past, and that he believed that Brown's statement was reliable. Lieutenant Bruce Haines of the state police also testified that when he met with Brown

and state's attorney John Connelly at the time of the wiretap investigation, he stated that he did not believe Brown was dishonest. Although the defendants asserted that Brown's motive for intentionally making a false statement and omitting material facts from his affidavit was a personal vendetta against Speers, Fennessy admitted that, although Brown may have had a personal motive for having Speers arrested, he also had a professional motive to see that a person he suspected of involvement in criminal activity was arrested. The transcript strongly supports the trial court's conclusion that Fennessy's testimony, on which the defendants so heavily relied, was equivocal at best and that he often contradicted statements he had made earlier in the hearing and before the grand jury.[7] On this record, we conclude that the trial court had a sufficient basis upon which to discredit Fennessy's testimony and, without credible evidence that Brown's statement was false and intentionally or recklessly made, did not err in concluding that the defendants failed to meet their burden of proof.

The defendants also alleged that Brown omitted material information from his affidavit. They claim that he failed to inform the wiretap panel (1) of the existence of a tape of a conversation in which Fennessy allegedly placed bets with Speers, (2) that Brown, as Fennessy's landlord, permitted him to live rent free, (3) of Brown's alleged personal grudge against Speers, and (4) that Brown gave Fennessy money from the city of Waterbury with which to place bets with Speers.

---

[7] We specifically note the trial court's reference in its memorandum of decision to Fennessy's testimony about informing police, including Brown, of gambling activity taking place at the Mattatuck Newsstand when Fennessy was a bartender. At the suppression hearing, Fennessy claimed he had never provided the police with such information. When shown a grand jury transcript of his testimony, however, he reversed his answer and responded to a number of questions about his involvement in that situation.

"Although the court in *Franks* mentioned only 'false statements . . . included . . . in the warrant affidavit,' material omissions from such an affidavit also fall within the rule if the defendant proves that the omissions were knowingly and intentionally made, or were made with reckless disregard for the accuracy of the affidavit. *United States* v. *Martin,* 615 F.2d 318, 328 (5th Cir. 1980)." *State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The trial court found that concern for the personal safety of the informant gave the police a legitimate reason for withholding the tape.[8] The state has a legitimate interest in protecting informants. See *State* v. *Richardson,* 204 Conn. 654, 657, 529 A.2d 1236 (1987). Given the other information provided in the affidavit, and the fact that the trial court credited Kamen's testimony that Brown had decided not to submit the tape when Kamens had told him he would be risking exposing the identity of his informant, we find no error in the trial court's determination that the tape was not necessary to a finding of probable cause.

As to the claims that Brown forgave Fennessy's payment of back rent and that Brown had a personal grudge against Speers, the trial court determined that those allegations were not proved by a preponderance of the evidence. Our review of the transcript supports this holding. As the court notes, Fennessy's testimony at the hearing that Brown forgave rent payments was equivocal and contradicted his testimony before the

---

[8] In addition to claiming that the omitted taped conversation was material to the affidavit, the defendants cite General Statutes § 54-41c (13) in support of their argument that the tape should have been presented to the wiretap panel with the affidavit. The defendants have done little more than cite the statutory provision. Because the issue has not been properly briefed, we decline to address the defendants' statutory claim. See *Morning Star Holding Co.* v. *Kostopoulos,* 12 Conn. App. 593, 595, 533 A.2d 569 (1987).

grand jury. At various times he testified that he still owed Brown rent money, that he did not pay him because he did not have the money, and that he had paid Brown but the check was returned for insufficient funds. The court did not find his testimony at the hearing credible.

The defendants also alleged that Brown had a personal grudge against Speers that arose when David Linsky, for whom Brown had cosigned a loan, allegedly defaulted on the loan. The defendants claimed that Linsky's default was caused by Speers' failure to pay a losing illegal bet he had placed with Linsky. Linsky's testimony at trial, which the trial court found credible, was that he had never taken a bet from Speers and that, although he may have been late on several payments, he had never defaulted on the loan. Again, we defer to the trial court's assessment of the credibility of witnesses and find no error in the court's ruling that these allegations were not proved by a preponderance of the evidence.

The trial court also found that the failure to include in the affidavit the fact that Fennessy had used city money to place bets did not materially affect the validity of the affidavit. The defendants did not present the trial court with any support for their claim that this information was material to a determination of probable cause. On our review of this claim, we conclude that the trial court did not err in determining that the defendants failed to meet their burden of proving that this omission materially affected the validity of that affidavit.

The third part of the defendants' claim of error is the assertion that the trial court erred when it determined that, regardless of the alleged false statement or omissions by Brown, the affidavit was sufficient to establish probable cause that the defendants were

involved in illegal gambling activities. The defendants assert that the requisite elements for determining probable cause have not been met. We disagree.

Our Supreme Court has held that the standard for determining probable cause as set out in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), applies to cases involving the sufficiency of affidavits for wiretap investigations. See *State* v. *Telesca,* supra, 601;[9] *State* v. *Ross,* 194 Conn. 447, 463, 481 A.2d 730 (1984). Under the *Aguilar-Spinelli* standard, "the wiretap panel that issues the wiretap order must be ' "informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable." ' *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984) . . . *State* v. *Jackson,* 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972)." (Citations omitted.) *State* v. *Telesca,* supra, 601–602.

We conclude that the trial court properly held that the Brown affidavit contained information sufficient to satisfy the first or "basis of knowledge" element of the *Aguilar-Spinelli* standard. The affidavit declares that Fennessy had been placing bets with the defendant Speers for at least two or three months, using one

---

[9] In *State* v. *Telesca,* 199 Conn. 591, 601 n.7, 508 A.2d 1367 (1986), the court noted that the statute listing the requirements of a proper wiretap application, now General Statutes § 54-41c, "incorporates the standards enunciated in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)."

of Speers' telephone numbers. The affidavit contains detailed information, including telephone numbers used and specific times and dates related to sports wagering, and identifies college basketball teams on which the informant placed bets with the defendants. This information satisfied the requirement that the affidavit "relate sufficient facts from which a judge reasonably could conclude that the informants based their allegations of criminal activity on sufficient underlying circumstances." *State* v. *Delmonaco,* supra, 339.

We also conclude that the trial court properly determined that the second or "reliability" element of the standard was met, because sufficient evidence of the circumstances from which Brown concluded that Fennessy was a credible informant, or that his information was reliable, was presented to the wiretap panel. The second part of the *Aguilar-Spinelli* standard is satisfied if the affidavit includes sufficient evidence showing either why the affiant concluded the informant was credible, or that the information was reliable. An affiant is not required, however, to convince a wiretap panel of an informant's credibility by a display of unequivocal proof based on specific details. "An affiant need not recite the precise factors on which he judged his informant credible and reliable. *Aguilar* v. *Texas* . . . requires only that the magistrate be informed of some of these underlying circumstances. If they are apparent to the commonsense reader of the affidavit—whether by necessary implication or recital—it is enough." *State* v. *Jackson,* supra, 452–53. We note that, on the basis of the information provided by the affiants, the three judge wiretap panel unanimously decided to issue the wiretap order and concluded that the application met the requirements of General Statutes § 54-41c.[10] The trial court proceeded

[10] General Statutes § 54-41c provides: "Each application for an order authorizing the interception of a wire communication shall be made in writ-

from a presumption that the affidavits supporting the search warrant were valid; *State* v. *Dolphin,* supra, 457; restricted its review to the record before the wiretap

ing upon oath or affirmation to a panel of judges. Each application shall include the following information: (1) The identity of the applicant and his authority to make such application; (2) the identity and qualifications of the investigative officers or agency for whom the authority to intercept a wire communication is sought; (3) the identity and qualifications of the investigative or law enforcement officers to whom disclosure of the contents of any intercepted wire communication or evidence derived therefrom might be made; (4) a statement of the use to which the contents of any intercepted wire communication or any evidence derived therefrom will be put; (5) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his reasonable belief that the wire communication of a particularly described person will constitute evidence of a crime enumerated in section 54-41b that has been or is being committed or that such communication will materially aid in the apprehension of the perpetrator of such crime and that an order should be issued, including (A) details as to the particular offense that has been or is being committed, (B) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (C) a particular description of the type of communications sought to be intercepted, (D) the identity of the person, if known, who has committed or is committing the offense and whose communications are to be intercepted, (E) the time and date when the facts and circumstances relied upon by the applicant were first received by him or by the investigative or law enforcement officer conducting the investigation, whichever is earlier, (F) the way in which the intercepted wire communication will constitute material evidence of the particularly described offense or will materially aid in the apprehension of the perpetrator of such offense, (G) the hours of the day or night during which wire communication may be reasonably expected to occur; (6) a full and complete statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ; (7) a statement of the period of time for which the interception is required to be maintained. No order authorizing or approving the interception of a wire communication shall be issued if the facts and circumstances relied upon by the applicant were discovered more than twenty days next preceding the date of the application. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter; (8) a full and complete statement of the facts concerning all previous applications known to the individual making the application, made to any panel of judges, for authorization to intercept, or for approval of inter-

panel; *State* v. *Ross,* 194 Conn. 447, 459, 481 A.2d 730 (1984); and accorded deference to the decision made by the wiretap panel. Id.; *State* v. *Couture,* 194 Conn.

ceptions of, wire communications involving any of the same persons, facilities or places specified in the application, and the action taken by the panel on each such application; (9) a statement that the wire communications sought are material to a particularly described investigation or prosecution and that such communications are not legally privileged; (10) if it is reasonably necessary to make a secret entry upon a private place or premises in order to install an intercepting device to effectuate the interception, a statement to that effect and to the effect that no practicable alternative method of executing the order which will preserve the secrecy of its execution exists; (11) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results; (12) where the application is for an order authorizing interception in excess of thirty-five orders previously issued by all panels in a calendar year, a statement setting forth the nature of the emergency situation which may result in imminent peril to the public health, safety or welfare, and the nature of that imminent peril, which requires the issuance of an additional interception order. The state's attorney shall inform the governor and the joint standing committee of the general assembly having cognizance of matters relating to criminal law and procedure of the nature of the emergency situation which may result in imminent peril to the public health, safety or welfare, and the nature of that imminent peril; (13) such additional testimony or documentary evidence in support of fact in the application as the panel of judges may require. Allegations of fact in the application may be based either upon the personal knowledge of the applicant or upon information and belief. If the applicant personally knows the facts alleged, it must be so stated. If the facts establishing such probable cause are derived in whole or part from the statements of persons other than the applicant, the sources of such information and belief shall be either disclosed or described, and the application shall contain facts establishing the existence and reliability of the informant, or the reliability of the information supplied by him. The application shall also state the basis of the informant's knowledge or belief. If the applicant's information and belief are derived from tangible evidence or recorded oral evidence, a copy or detailed description thereof shall be annexed to or included in the application. Affidavits of persons other than the applicant may be submitted in conjunction with the application if they tend to support any fact or conclusion alleged therein. Such accompanying affidavits may be based either on personal knowledge of the affiant, or information and belief with the source thereof and reason therefor specified."

530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

After excising Brown's allegedly false and allegedly intentionally or recklessly made statement that the informant's past information had led to two arrests and convictions, the trial court found that Brown's remaining affidavit statements—(1) that he had known Fennessy for about four years; (2) that Fennessy had no arrest record; and (3) that Fennessy was gainfully employed and enjoyed a good reputation within the community in which he lived—were sufficient indicia of reliability upon which the wiretap panel could find the affidavit established that the informant was credible. The court also determined that Fennessy's information was reliable on the basis of statements in the affidavit that Fennessy had provided Brown with information in the past that had proved both truthful and accurate, that Fennessy was knowledgeable in the area of sports betting, and that Fennessy himself had engaged in illegal gambling with the defendants.

Given some of the events that occurred following Speers' arrest such as the labeling of Fennessy as an informant, Fennessy's admission of having felt intimidated by Speers' driving him to a meeting with state police officers at which he was questioned about the information he had given Brown about Speers, and Fennessy's arrest by the state police, we do not find it implausible that the trial court would discredit Fennessy's testimony for the purpose of deciding whether Brown's statement was false and intentionally or recklessly made, on one hand, and, on the other, find that the wiretap panel had sufficient indicia of reliability to credit Brown's statement that Fennessy was, in Brown's estimation, a reliable informant. We conclude that the trial court was correct in determining that, even absent the allegedly false statements in the affidavit, there was sufficient information to provide a basis for the wiretap panel to determine that the affi-

davits satisfied the second element of *Aguilar-Spinelli* and the requirements of General Statutes § 54-41c, and to approve the wiretap application.

## II

The defendants also claim that the trial court erred in failing to take judicial notice of Brown's perjury case court file after Brown refused to testify. This argument is without merit.

During the suppression hearing, the defendants sought to introduce the entire case file pertaining to Brown's perjury arrest. In addition to general information concerning Brown's arrest, this file contained the transcripts of Brown's testimony before the grand jury and a lengthy affidavit by Inspector Frank D'Amico of the chief state's attorney's office that was used to establish probable cause to arrest Brown and contained references to the grand jury testimony of others. The prosecution objected to the admission of the file, arguing that it contained hearsay and included conclusory and irrelevant information. The court sustained the objection, but stated that because Brown was not available it would allow the introduction of the transcript of his testimony before the grand jury. The defendants declined the court's offer and again requested that the entire case file be introduced. The court refused, and the defendants withdrew their request. The defendants have not provided any legal authority supporting the admission of the file but argue only that the court should have admitted it because of the unique situation in which the defendants found themselves after Brown refused to testify.

A court has the power to take judicial notice of a file in another pending court case. *State* v. *Bunkley*, 202 Conn. 629, 648, 572 A.2d 795 (1987). A trial court, however, also has broad discretion in determining the admissibility of evidence. Id., 648–49. Trial court rul-

ings on evidence are accorded great deference on appeal, and such rulings will be disturbed only upon a showing of clear abuse of discretion. *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986). Our review of the record leads us to conclude that the trial court did not err in refusing to admit the entire case file because it contained inadmissible hearsay and double hearsay.

## III

The defendants also argue, for the first time on appeal, that their inability to cross-examine their chief accuser, Brown, violated their sixth amendment right of confrontation and should have mandated a dismissal of all charges. Because the defendants failed to raise the argument at trial and do not seek review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), or claim that the ruling constituted plain error reviewable under Practice Book § 4185, we decline to review the claim. See *State* v. *Maisonet,* 16 Conn. App. 89, 546 A.2d 951 (1988).

There is no error.

In this opinion the other judges concurred.