STATE OF CONNECTICUT *v.* ANTHONY DELMONACO
(11875)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued May 2—decision released August 28, 1984

*Ronald E. Cassidento,* with whom, on the brief, was *Kenneth J. Harris,* for the appellant (defendant).

*Gary Strickland,* law student intern, with whom were *Thomas P. Miano,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant, Anthony Delmonaco, entered a plea of nolo contendere to a charge of possession of a narcotic substance with intent to sell, General Statutes (Rev. to 1981) § 19-480 (a). The trial court rendered judgment of guilty and sentenced the defendant to a term of ten years imprisonment. The defendant has appealed, claiming error in the trial court's denial of his motion to suppress evidence.[1] We find no error.

The facts surrounding the defendant's arrest are not in dispute: On October 8, 1981, officers of the Berlin

---

[1] The defendant entered his plea of nolo contendere pursuant to General Statutes § 54-94a which provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

police department and the Statewide Narcotics Task Force, acting under authority of a search and seizure warrant, conducted a search of room 12 of the Plaza Motel in Berlin. The warrant authorized the seizure of, inter alia, any restricted substances and any related paraphernalia. The officers discovered and seized a quantity of cocaine, a restricted substance, in the room and arrested the defendant, who occupied the room at the time.

The defendant was charged by information in two counts with the crimes of possession of a narcotic substance with intent to sell, General Statutes (Rev. to 1981) § 19-480 (a), and possession of a narcotic substance, General Statutes (Rev. to 1981) § 19-481 (a). On November 8, 1982, the defendant filed a pretrial motion to suppress, inter alia, all evidence seized from room 12 of the Plaza Motel, claiming that the authorizing warrant was issued "illegally and without probable cause."

At the beginning of a hearing on that motion, assistant state's attorney Thomas P. Miano informed the court that one of the affiants, Detective Lawrence Skinner, had recently learned that the representations contained in one paragaph of the warrant affidavit[2] were untrue. Paragraph four of the affidavit had stated that Officer Annunziata of the Berlin police department had observed the defendant arrange a sale of drugs with another person in the Speak Easy Cafe in Berlin. Shortly before the hearing Annunziata told Skinner that he had been mistaken in his earlier allegation and that the defendant was not the man he had observed arranging the drug sale. Skinner then brought this information to the attention of assistant state's attorney Miano. With the full agreement of both the state and the defendant the trial court then examined the

---

[2] The affidavit is set forth as an appendix to this opinion.

warrant excluding paragraph four. The court concluded that the remainder of the warrant reflected sufficient probable cause to justify the search and therefore denied the defendant's motion to suppress. The defendant then entered a plea of nolo contendere on the first count to the charge of possession of a narcotic substance with intent to sell.

On December 17, 1982, the trial court adjudged the defendant guilty on the first count of the crime of possession of a narcotic substance with intent to sell, General Statutes (Rev. to 1981) § 19-480 (a), and sentenced him to a term of imprisonment of ten years.[3]

On appeal the defendant claims that the trial court erred in denying his motion to suppress. He claims that: (1) the evidence seized should have been suppressed solely because the warrant contained an intentionally or recklessly false statement, regardless of whether the remainder of the warrant demonstrated probable cause; and (2) that the warrant affidavit, with the erroneous information excluded, failed to demonstrate probable cause sufficient to justify the issuance of the warrant.[4]

I

In *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the United States Supreme Court defined the protections afforded by the fourth

[3] The record fails to indicate the disposition of the second count.

[4] After this case was heard at oral argument the United States Supreme Court issued its opinion in *United States* v. *Leon,* 468 U.S.    , 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), in which it held that the fourth amendment to the United States constitution does not always require exclusion of evidence seized pursuant to an invalid search warrant. Such evidence need not be excluded "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id., 3420.

Because we hold that the warrant in question here was validly issued, we need not decide whether the rule announced in *Leon* would be applicable to this case. For the same reason, we need not decide whether the modification of the exclusionary rule made by *Leon* would sufficiently uphold the rights guaranteed by article first, § 7 of the Connecticut constitution.

amendment to the federal constitution in circumstances where a search warrant has been issued by a magistrate in reliance on an affidavit that contains false information. The court held that if a criminal defendant who has standing to challenge the search can establish by a preponderance of the evidence that the affiant included the false information either knowingly or with reckless disregard for the truth, the court must then examine the affidavit exclusive of the false information. Id., 155–56. Then, if "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id., 156;[5] see *State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The corollary to that rule is, of course, that if the affidavit's remaining content independently establishes probable cause, the warrant is valid and the evidence seized pursuant to it need not be suppressed.

The rule announced in *Franks* is designed to uphold fourth amendment protections against unlawful searches and seizures. See U.S. Const., amend. IV. On appeal the defendant contends, for the first time, that article first, § 7 of the Connecticut constitution should be construed as providing a broader protection against unlawful searches, one that is not adequately sustained by the rule of *Franks.* He argues that the *Franks* rule is insufficient because it allows police officers to include false information in an affidavit at the risk only of having the false information excised if discovered and probable cause reassessed on the basis of the affidavit's accurate representations. He argues, in effect, that this leaves the police in a "can't-lose" situation when deciding what information to include in an affidavit and

[5] See footnote 4, supra.

serves as an ineffective prophylaxis against searches that are unsupported by probable cause.

However persuasive the defendant's claim might be, it is not properly before this court. The defendant's argument depends on a finding that the affiant knowingly or recklessly falsified the warrant affidavit. At the hearing on his motion to suppress, when the state admitted the error in the affidavit and offered to have the court consider the warrant's sufficiency exclusive of paragraph four, the defendant readily agreed. He thus failed to seek the opportunity to establish by a preponderance of the evidence that the affiant, Skinner, had knowingly or recklessly included false information in the affidavit. Having accepted all that was due him under *Franks* (a determination of probable cause exclusive of the false information) without objection, the defendant cannot now seek a rehearing[6] on the issue.

Furthermore, we note that after receiving Skinner's testimony during a hearing on the motion to suppress the trial court observed that Skinner's inclusion of erroneous information in his affidavit "comes about quite honestly." Defense counsel agreed with the trial court's conclusion, stating that the information conveyed in paragraph four "was a mistake" and not a deliberate falsehood. Thus, the rule for which the defendant argues is inapplicable to the facts of this case as found by the trial court.

## II

The defendant also claims that the trial court erred in finding that the affidavit, absent paragraph four, con-

[6] At oral argument defense counsel conceded that because the defendant had not raised this argument before the trial court, the only relief that he could reasonably request is another hearing to determine if Skinner had acted knowingly or recklessly when he included Annunziata's information in the affidavit.

tained probable cause to justify issuance of the warrant.[7]

In reviewing a search warrant affidavit the court "must ascertain whether the facts in the affidavit are sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant. *State* v. *Williams,* 169 Conn. 322, 326, 363 A.2d 72 (1975); *State* v. *Rose,* 168 Conn. 623, 627–28, 362 A.2d 813 (1975); *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967)." *State* v. *DeChamplain,* 179 Conn. 522, 527–28, 427 A.2d 1338 (1980); see *State* v. *Arpin,* 188 Conn. 183, 193, 448 A.2d 1334 (1982). "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Emphasis in original; citations omitted.) *State* v. *DeChamplain,* supra, 528–29; see *State* v. *Arpin,* supra. The reviewing court may consider only the information that was actually before the issuing judge at the time he or she signed the warrant. *Aguilar* v. *Texas,* 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Giordenello* v. *United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958); *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).

A fair reading of the warrant affidavit, excluding paragraph four, discloses the following facts: Two unnamed, reliable informants had stated that the defendant resided in room 12 of the Plaza Motel. The unnamed informants also stated that the defendant sold drugs, consorted with other drug dealers, and that he hosted "wild parties" in his room. Skinner and his co-

---

[7] See footnote 4, supra.

affiant, Officer Joseph Sazanowicz of the Berlin police department, conducted a surveillance of room 12 of the Plaza Motel at various times. Between 1 a.m. and 6 a.m. on September 6, 1981, Skinner observed the defendant, accompanied by an associate known to Skinner as a drug dealer, make repeated trips from the Speak Easy Cafe to room 12. During the evening hours of September 30, 1981, Skinner observed several persons enter room 12 and leave a short time later. Through the open door Skinner saw one such visitor inject himself with a needle and leave shortly thereafter. In the late evening and early morning of October 1 and October 2, 1981, both affiants again observed the defendant and his associate move between room 12 and the Speak Easy Cafe several times; on one occasion the defendant carried a brown paper bag. Several other persons were again seen entering room 12 and departing shortly thereafter. The defendant and his associate had an extensive history of criminal activity.

In determining that the affidavit, excised of paragraph four, did establish probable cause to search the premises in question, the trial court applied the familiar *Aguilar-Spinelli* test. That test, which stemmed from the United States Supreme Court's opinions in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), consists of two prongs: "The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable."[8] *State* v. *Jackson,* supra, 446.

---

[8] We note that after the trial court decided the defendant's motion to suppress the United States Supreme Court disavowed the rigid two-pronged

On appeal the defendant claims that the affidavit in question does not satisfy the first prong of *Aguilar-Spinelli*. He argues that the affidavit does not relate sufficient facts from which a judge reasonably could conclude that the informants based their allegations of criminal activity on sufficient underlying circumstances. The defendant contends that all information provided by the two unnamed informants must therefore be excised from the warrant affidavit leaving only the affiants' personal observations as a basis for issuing the warrant. He concludes that that information, standing alone, does not establish probable cause to search the premises.

The state concedes that the affidavit does not set forth the facts or circumstances on which the informants based their allegations. The state argues, however, that the information provided by the affiants' own

---

test that had evolved out of *Aguilar* and *Spinelli*. In *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the court decided to "abandon the 'two-pronged test' " of *Aguilar* and *Spinelli,* employing instead a "totality of the circumstances analysis"; *Illinois* v. *Gates,* supra, 233; in which the informant's veracity and basis of knowledge are "relevant considerations" to be weighed along with all other information in the affidavit to determine if probable cause exists. Id. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id.

Although the state has argued for the application of *Gates* to this case, neither party addressed the question whether *Gates* should be applied retroactively to cases decided previously but which had not yet been finally decided on appeal. See *United States* v. *Mendoza,* 727 F.2d 448 (5th Cir. 1984) (holding that *Gates* should be applied retroactively); see also *Massachusetts* v. *Upton,* 466 U.S. 727, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984) (where the United States Supreme Court, although not discussing retroactivity, applied *Gates* to a case that was on appeal before the Massachusetts Supreme Judicial Court at the time the *Gates* decision was issued). For the purposes of this appeal we will apply the *Aguilar-Spinelli* test, which is unquestionably more favorable to the defendant than *Gates. United States* v. *Mendoza,* supra, 450.

observations, as expressed on the face of the affidavit, provides independent verification of the informants' allegations from which the issuing judge could reasonably conclude that the informants' information was based on fact.

The first prong of the test that grew out of the *Aguilar* and *Spinelli* decisions, requiring that the affidavit set forth the informant's basis of knowledge, serves a valuable purpose. In most circumstances probable cause to search must be found by a "neutral and detached magistrate" before the state's agents may search an area in which one has a reasonable expectation of privacy. *Katz* v. *United States,* 389 U.S. 347, 356–58, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). If a judge were to authorize a search based solely on allegations provided by an otherwise credible person without requiring a showing of the underlying circumstances that serve as a basis for the informant's allegations, the informant would usurp the judge's role as the finder of probable cause. The protections that a judge's involvement in the process are designed to provide would thus be erased. *Spinelli* v. *United, States,* supra, 416; *Nathanson* v. *United States,* 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933).

Even where the *Aguilar-Spinelli* test[9] is applied rigidly, however, there are certain circumstances in which a reliable or credible informant's tip that fails to satisfy the "basis of knowledge" prong may be credited for the purpose of establishing probable cause. In *Spinelli* the court found that the affidavit failed to set forth the informant's basis of knowledge for his tip to the affiants. *Spinelli* v. *United States,* supra, 418. The court then observed that the partially corroborated tip was insufficient, in and of itself, "to provide the basis for a finding of probable cause." Id. It added, how-

[9] See footnote 8, supra.

ever: "This is not to say that the [defective] tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support." Id.

The *Spinelli* court thus implicitly recognized that a tip that is defective because the affidavit fails to set forth the underlying facts or circumstances on which the tip is based need not be totally excluded from the reviewing court's consideration of whether the affidavit substantiates a finding of probable cause. Even though "the suspicions engendered by the informant's report" may be insufficient to justify issuance of a warrant independently, where the affiants' own observations are very incriminating, the informant's report may bridge the gap and "ripen into a judgment" of probable cause. Id; see *Ker* v. *California*, 374 U.S. 23, 36, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); see also 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.3 (f), pp. 566–68. *"Aguilar* applies with full rigor only when the search warrant or the arrest depends solely on the informer's tip. When a tip not meeting the *Aguilar* test has generated police investigation and this has developed significant corroboration or other *'probative indications of criminal activity* along the lines suggested by the informant,' see Rebell, The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards, 81 Yale L.J. 703, 715–17 (1972), the tip, even though not qualifying under *Aguilar,* may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause. See also Note, The Informer's Tip as Probable Cause for Search or Arrest, 54 Cornell L.Rev. 958, 967 (1969)." (Emphasis in original.) *United States* v. *Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972); see *State* v. *Gomez,* 101 Idaho 802, 623 P.2d 110, cert. denied, 454 U.S. 963, 102 S. Ct. 503, 70 L. Ed. 2d 378 (1981).

The observations of affiants Skinner and Sazanowicz, as related in their affidavit, raised considerable suspicion that narcotics were kept in room 12 of the Plaza Motel. During each of the surveillances, the defendant and his associate, who had previously been arrested for a narcotics offense, were seen making several trips between room 12 and the Speak Easy Cafe. On two of those occasions the affiants also observed several different persons visit room 12 and depart after a very short period of time. During one surveillance Skinner observed one such visitor to room 12 inject a hypodermic needle into his arm.

We need not decide whether the affiants' observations, standing alone, would be sufficient to establish probable cause to believe that narcotics would be found in room 12. The activities they observed bore significant indicia of illicit narcotics trafficking in that room. When that information was combined with tips from two reliable informants, which simply confirmed the reasonable suspicions that flowed from the affiants' observations, probable cause was established. Thus, we conclude that the trial court did not err in denying the defendant's motion to suppress the evidence seized pursuant to the search warrant.

There is no error.

In this opinion the other judges concurred.

### Appendix

The affidavit set forth the following information:

"1. That the affiants are Det. Sgt. Lawrence E. Skinner and Off. Joseph Sazanowicz, both regular members of the Berlin, Ct. Police Dept. and as such have been for periods of 11 yrs. and 3½ yrs. respectively. That during this period both affiants have participated in numerous surveillances investigations and

arrests pertaining to the illegal possession, possession with intent to sell, and/or sale of narcotics restricted substances, controlled substances and controlled drugs in violation of Ct. State Statutes. That the affiant, Sazanowicz is currently assigned to the Statewide Narcotics Task Force.

"2. That on 8-18-81 Affiant Skinner was contacted by a credible and reliable informant who has provided information in the past that has led to no less than three felony arrests and convictions. That the informant, hereafter known as CI1, stated that an individual known as TONY D was living in room 12 at the Plaza Motel in Berlin and that he was heavily involved in the trafficking of cocaine, marijuana and 'what ever other drugs he can get his hands on.' That CI1 stated that the subjects real name was Anthony Delmonaco and that he drove a red Mustang. That CI1 stated that Tony D frequented the Speak Easy Cafe in Berlin and was a known associate of [name deleted]. That [name deleted] is known personally to both affiants as a drug dealer.

"3. That on 8-19-81 CI1 called again and stated that a wild party had taken place the night before in Rm. 12 at the Plaza Motel in Berlin, Ct. and that people were laying around the room with needles sticking out of their arms.

"4. That on 8-20-81 Off. Annunziata of the Berlin Police Dept. told Affiant Skinner that he worked on a private assignment at the Speak Easy Cafe a week prior and at that time he was watching an individual known to him as Tony D. That Tony D. followed a young girl out of the cafe and they walked to the rear of the building. That Annunziata said that he followed them and from the side of the building he heard the girl trying to buy $300 worth of drugs from Tony D.

That Tony D told her that he didn't have anything that night but that he would have it the following day and that he wanted the money 'up front.'

"5. That on 8-28-81 Sgt. Matta of the Berlin Police Dept. told the affiants that he had spoken to an informant of his, hereafter known as CI2, and that CI2 had told him that an individual known as Tony D was living at the Plaza Motel in Berlin and hanging around the Speak Easy Cafe that that he was 'doing a lot of coke.'

"6. That the affiants met with CI1 on 8-28-81 and CI1 again went over all of the information. That CI1 told the affiants that the other rooms at the Plaza Motel are occupied by Exotic Dancers and that Tony D is supplying them with cocaine and heroin.

"7. That on 9-01-81 affiant Sazanowicz met with CI1 again and CI1 gave the names of Tony D, [name deleted] and [name deleted] as being heavily involved in drug traffic at the Plaza Motel.

"8. That on 9-16-81 Affiant Skinner was contacted by another Police Agency Member who stated that he had information that an individual named Delmonaco was staying at the Plaza Motel in Berlin and that he was dealing drugs to all of the Exotic Dancers on the Berlin Turnpike. That his information was that Delmonaco was an associate of [name deleted] and [name deleted], both drug dealers.

"9. That on 9-6-81 Affiant Skinner surveilled the area of the Plaza Motel and the Speak Easy Cafe from 0100 hrs. to 0600 hrs. That during this period of time both Delmonaco and [name deleted] were moving continually between Rm. 12 at the motel and the Speak Easy Cafe. That after the cafe closed at 0300 hrs. both were in the room with approximately 8 other people

and it appeared that a party was taking place. That at 0600 hrs. when the surveillance ended, the party was still in progress.

"10. That on 9-28-81 CI1 called affiant Skinner and stated that a wild party had taken place again the night before at Rm. 12 of the Plaza Motel and people were all around shooting dope. That the other Police Agency Member mentioned in paragraph #8 called Affiant Skinner an hour after CI1 and stated that he had been on surveillance at the Plaza Motel the night before and that he observed a wild party in progress.

"11. That on 9-30-81 Affiant Skinner surveilled Rm. #12 at the Plaza Motel from 2100 hrs. until 2300 hrs. That during this period of time the affiant observed a constant flow of persons pulling into the parking area, entering the room and leaving after a short period of time. That at 2145 hrs. the affiant observed through the open front door a white male injecting a needle into his right arm. That the white male left immediately after. That the affiant also observed a white male operating Alabama reg. HBH806 pull out at 2130 hrs. and return at 2140 hrs. That this car then left again at 2210 hrs. and the affiant followed it to the Kitchen Cafe in Newington. That the affiant called CI1 on 10-1-81 and asked about this car and CI1 said that Tony D's son sometimes drives that car and makes deliveries of narcotics to the dancers. That the Kitchen cafe employs Exotic Dancers. That CI1 also told the affiant the Tony D keeps a gun in his refrigerator for protection.

"12. That the affiants surveilled Rm. 12 at the Plaza Motel from 2200 hrs. on 10-1-81 until 0230 hrs. on 10-2-81. That also present on the surveillance were Lt. William Smith, Commanding Officer of the Statewide Narcotics Task Force and Trooper Angelo Tosi, Intelligence Officer for said agency.

"That at approximately 2040 hrs. Delmonaco arrived at the room driving his red Mustang, Ct. reg. 975ASB. (That this vehicle is currently listed to a [name deleted] but previously had Ct. reg. VF4529 attached to it, listed to Anthony Delmonaco—that the affiants have checked the VIN's on both registrations and have found that they are one and the same.) That at 2330 hrs. [name deleted] was observed entering the Speak Easy Cafe carrying a brown paper bag, exiting shortly afterwards and arriving at Rm. 12, Plaza Motel at approx. 2337 hrs. That he exited his vehicle, NY reg. 889VBI and carried a brown paper bag into the room. That he remained in the room with Delmonaco until approx. 0026 hrs. when he left and went back to the Speak Easy Cafe. That at approximately 0031 hrs. Delmonaco left the room and put what appeared to be a brown paper bag into his trunk and left heading north on the Berlin Turnpike. That he returned at Approx. 0040 hrs. and left again at approx. 0041 hrs.

"13. That at approx. 0050 hrs. a heavy set W/M driving Ct. reg 786APW arrived at the room and spoke thru the doorway to a W/F who was inside. That he left approx. 2 minutes later. That two W/F's arrived as the heavy set W/M was leaving. That they spoke to the W/F in the room and left immediately after. That 786APW returned at approx. 0103 and drove thru the parking lot and left. That Delmonaco returned at approx. 0108 hrs. and went to a pay phone located on the outside of the motel. That 786APW pulled in at the same time and went to the room. That the heavy set W/M entered the room, made contact with Delmonaco and left approx. 2 mins. later.

"14. That at 0130 hrs. Delmonaco drove out last seen heading south on the Berlin Turnpike. That he returned at approx. 0145 hrs. That at approx. 0215 several vehicles were seen at the room, including the [name deleted] vehicle, NY reg. 889VBI.

"15. That the criminal history on Anthony Delmonaco shows 13 arrests with 4 felony convictions including a 10 year sentence in 1969 for bank robbery. That the criminal history on [name deleted] shows 14 arrests with 2 felony convictions for burglary and robbery. That the affiants have personal knowledge of the fact that [name deleted] was arrested in Oct. of 1980 at which time he was found to be in possession of cocaine and marijuana.

"16. That the undersigned affiants based on their training and experience, knowledge of the crimes, information received, surveillances conducted, and facts set forth within this affidavit are of the opinion that they have established probable cause to believe that white males known as Anthony Delmonaco and [name deleted] are violating the existing laws of the State of Conn. in regard to narcotics as set forth previously in this affidavit and application on the premises of room 12 at the Plaza Motel in Berlin, Ct. and in their vehicles, a red Ford Mustang, Ct. reg. 975ASB, 1979 Cadillac, NY reg. 889VBI."