## STATE OF CONNECTICUT *v.* ALAN MORRILL (13143)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 9—decision released December 15, 1987

*Michael Graham,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, for the appellee (state).

GLASS, J. The defendant, Alan Morrill, was convicted upon a conditional plea of nolo contendere[1] to a substitute information charging him with illegal sale of a controlled substance in violation of General Statutes § 21a-277 (b).[2] The plea of nolo contendere was entered following the denial by the trial court, *Miano, J.,* of: (1) a motion to suppress evidence challenging the facial validity of the warrant and sufficiency of the affidavit, under the standards of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983); (2) a motion to reconsider the motion to suppress based on *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985); and (3) a supplemental motion to suppress pursuant to *Franks* v. *Delaware,*

---

[1] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure to motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] "[General Statutes] Sec. 21a-277. (Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. . . .

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marihuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). On appeal, the defendant claims that the trial court erred in denying each of his motions. We find no error.

The affidavit[3] in support of the search warrant sets forth the following facts: On January 26, 1985, the affi-

---

[3] "STATE OF CONNECTICUT
SUPERIOR COURT
AFFIDAVIT AND APPLICATION
SEARCH AND SEIZURE WARRANT

"To: A Judge of the Superior Court

"The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Controlled drugs, cannabis sativa and substances derived from same, plastic bags, manila envelopes, scales, pipes, strainers, records of drug sales and transactions and monies derived from same, weapons, firearms and ammunition.

"X is possessed, controlled, designed or intended for use as a means of committing the crime of Possession of a Cannabis-Type Substance with Intent to Sell, [General Statutes §] 21a-278 (b).

"X is or has been or may be used as the means of committing the crime of Possession of a Cannabis-Type Substance with Intent to Sell, [General Statutes §] 21a-278 (b).

"And is within or upon a certain person, place, or thing, to wit . . . Location known as an unattached garage, behind #70-#72 Wilson Avenue, Windsor, CT. The garage is a light color with green trim and has a residential loft area above the garage bay. The garage loft is occupied by an unknown white male subject. The garage is on the Southwest side of Wilson Avenue, behind #70-#72 Wilson Avenue. The driveway leading to the garage is on the West side. There is a 'anchor' type fence surrounding the curtilage of the above property.

"AND THAT THE FACTS ESTABLISHING THE GROUNDS FOR ISSUING A SEARCH AND SEIZURE WARRANT ARE THE FOLLOWING:

"That: The affiants, Lt. Nicholas C. Riccio and Detective Theodore Kuracz, are both regular, sworn members of the Windsor Police Department with approzimately 33 years total experience in the investigation of criminal matters. Both these affiants are also thoroughly trained and are familiar and have worked numerous cases involving narcotics and controlled drugs. These affiants are familiar with drug trafficking methods and have conducted numerous narcotic and drug investigations which have resulted in the issuance of search and seizure warrants which have resulted in arrests and convictions.

"That: On the date of Saturday, January 26, 1985, at approzimately 6:30 P.M., affiant Lt. Riccio was contacted by Sgt. Larry Overstrom, the Shift Commander on duty at the Windsor Police Department,

ant, Lieutenant Nicholas C. Riccio of the Windsor police department, contacted Detective James Lavery of the Newington police department, at the request of Riccio's shift commander. Lavery informed Riccio that he was "presently working with an extremely credible,

to contact Detective James Lavery of the Newington Police Department in reference to some vital narcotics information.

"That: Affiant Lt. Riccio contacted Detective Lavery who is active in the area of narcotics investigations for the Newington Police Department. Detective Lavery stated to affiant Lt. Riccio that he is presently working with an extremely credible, reliable and confidential informant who is very knowledgable in the area of drug activity and sales and trafficking and has in the past given Detective Lavery information on drug activities that [has] resulted in arrests and convictions including a seizure of 32 pounds of marihuana.

"That: Detective Lavery told affiant Lt. Riccio that sometime during the three day period of January 24, 1985, through January 26, 1985, his confidential and reliable informant was present at the presmises of an unattached garage behind #70-#72 Wilson Avenue, Windsor, CT., with an unknown white male subject who uses the upper area of the garage as a loft residence. While the informant was at the premises, he observed the unknown white male subject sell a high-grade type of marihuana known as Sinsemilla. That also during the drug transaction, the unknown white male subject stated that he had 10 pounds of Sinsemilla to sell.

"That: Detective Lavery was told the above information by his informant who is confidential and reliable. Detective Lavery corroborated the informant's description of the location by going to the area.

"That: This affiant, Lt. Riccio, after receiving the information from Detective Lavery, went to the area of Wilson Avenue, Windsor, CT., and verified that behind #70-#72 Wilson Avenue there is such a garage. Lt. Riccio did observe lights coming from the upper area of the garage as if someone was using it as a residence.

"That: Based upon these affiants' experience and prior knowledge of drug dealers, that weapons and firearms are kept on their person and premises for protection against robbery of drugs and drug monies.

"That: Based upon the information in the foregoing affidavit, these affiants request a search and seizure warrant be issued for the described garage behind #70-#72 Wilson Avenue, Windsor, CT., and for the person of the unknown white male subject who is reportedly using the upper loft area of the garage as a residence.

"Signed at Windsor, Connecticut, this 26th day of Jan., 1985
/s/Lt. Nicholas C. Riccio

"Signed at Windsor, Connecticut, this 26th day of Jan., 1985
/s/Det. Theodore Kuracz"

reliable and confidential informant who is very knowledgable in the area of drug activity and sales and trafficking and has in the past given [him] information on drug activities that have resulted in arrests and convictions including a seizure of 32 pounds of marihuana." Lavery told Riccio that sometime during the three day period of January 24 through January 26, 1985, the informant told Lavery that he had been present in an unattached garage behind 70-72 Wilson Avenue, Windsor, with the defendant who used the upper area of the garage as a loft residence. The informant told Lavery that while at the loft residence he had seen the defendant sell a high grade type of marihuana and during the transaction he heard the defendant state that he had ten pounds of marihuana to sell. Lavery told Riccio that he had corroborated the informant's description of the premises by going to the address. Thereafter, Riccio went to the area of 70-72 Wilson Avenue, verified the existence of the unattached garage, and observed lights in the upper area of the garage which indicated to him that someone was using it as a residence. On January 26, 1985, a search warrant was issued for the Wilson Avenue garage loft premises. On January 27, 1985, officers of the Windsor police department, acting pursuant to the search warrant, searched the garage, seized what was later determined to be marihuana and arrested the defendant who was present during the search.

## I

The defendant's first claim is that the trial court erred in finding that the search warrant was based on sufficient probable cause under the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the Connecticut constitution. Initially, we recognize that "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with

criminal activity or will assist in a particular apprehension or conviction; *State* v. *Doe,* 115 N.H. 682, 685, 371 A.2d 167 (1975); 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) §§ 3.1 (b) and 3.7; cf. *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); ('mere' evidentiary materials may be validly seized as well as instrumentalities, prints, weapons and contraband); *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Emphasis in original.) *State* v. *DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). We note that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States* v. *Ventresca,* 380 U.S. 102, 106, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

In *State* v. *Kimbro,* supra, we recently reviewed probable cause under article first, § 7, of our state constitution, as contrasted with the test for probable cause set forth in *Illinois* v. *Gates,* supra, which reflects the federal constitutional standard for determining probable cause. In *Kimbro* we recognized that the probable cause determination under the "totality of circumstances analysis set out in [*Gates* was less strict than the] two-prong analysis of *Aguilar-Spinelli*[4] cases which predated *Gates.*" *State* v. *Kimbro,* supra, 221. Consequently, we concluded that article first, § 7, of the Connecticut constitution "affords more substantive protection to citizens than does the fourth amendment to the federal constitution in the determination of probable cause." Id., 233. Accordingly, if the allegations in the affidavit meet the standards for determining probable cause that we applied in *Kimbro,* it will not be

[4] *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

necessary for us to determine if the trial court erred in applying the " 'fluid' concept of [probable cause] as set out in *Gates* . . . ." Id., 235–36.

The *Aguilar-Spinelli* test for reviewing a magistrate's finding of probable cause consists of two prongs: " 'The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable.' " *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984); *State* v. *Jackson,* 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). The defendant claims that the affidavit in this case failed to satisfy both prongs of the *Aguilar-Spinelli* test.

The first prong of the test, often referred to as the "basis of knowledge" prong, examines the information provided by the informant to determine if it "relate[s] sufficient facts from which a judge reasonably could conclude that the informants based their allegations of criminal activity on sufficient underlying circumstances." *State* v. *Delmonaco,* supra, 339. Upon careful examination of the affidavit we conclude that it adequately supports the trial court's finding that the "basis of knowledge" requirement was satisfied. The affidavit states that the informant personally observed the defendant sell marihuana and he heard the defendant state that he had ten pounds to sell. From these statements the magistrate could reasonably have inferred that the defendant was engaged in the ongoing criminal activity of selling marihuana. See *State* v. *Rose,* 168 Conn. 623, 632, 362 A.2d 813 (1975). Furthermore, the informant accurately described the

premises in question, which were unique in that an unattached garage behind a house was being used as a residence. See *State* v. *Bember,* 183 Conn. 394, 439 A.2d 387 (1981); *State* v. *Jackson,* supra.

The affidavit also satisfied the second prong of the *Aguilar-Spinelli* test, known as the "reliability" prong. " 'An affiant need not recite the precise factors on which he judged his informant credible or reliable. . . . If they are apparent to the common-sense reader of the affidavit—whether by necessary implication or recital—it is enough.' *State* v. *Jackson,* supra, 452–53." *State* v. *Telesca,* 199 Conn. 591, 603, 508 A.2d 1367 (1986). Although it is only necessary that either part (a) or part (b) of this prong be satisfied, we find that both parts of the reliability prong were met in this case.

Part (a) of the second prong tests the credibility of the informant. The affidavit described the informant as "extremely credible, reliable and confidential," and stated that he was "knowledgable in the area of drug activity and sales and trafficking and has in the past given . . . information on drug activities that have resulted in arrests and convictions including a seizure of 32 pounds of marihuana." We have held that when an informant has a track record of providing reliable information, the "previous reliability of an informant, though not constitutionally required, is a basis for crediting his information." *State* v. *Romano,* 165 Conn. 239, 244, 332 A.2d 64 (1973). Therefore, this information in the affidavit satisfied the credibility portion of the second prong of the *Aguilar-Spinelli* test, thus permitting a finding of probable cause. See *State* v. *Delmonaco,* supra.

Part (b) of the second prong tests the reliability of the informant's information. We have held that "[o]ne of the most common factors used to evaluate the relia-

bility of an informant's information is the corroboration of the information by the police . . . . 'The theory of corroboration is that a statement which has been shown true in some respects is reasonably likely to be true in the remaining respects. *State* v. *Jackson,* supra, 447.' " *State* v. *Just,* 185 Conn. 339, 361, 441 A.2d 98 (1981). The informant accurately described the premises at 70-72 Wilson Avenue, Windsor. This description was corroborated by Lavery of the Newington police department and affiant Riccio of the Windsor police department. See *State* v. *Ferguson,* 185 Conn. 104, 440 A.2d 841 (1981). We find that a common sense reading of the facts relating to part (b) also satisfied the "reliability" prong of the *Aguilar-Spinelli* test. Because the affidavit contains sufficient evidentiary allegations to permit the issuing judge to make a finding of probable cause under the standards of *Kimbro,* it is not necessary for us to consider the probable cause determination under the less strict standards of *Gates.*

The defendant also claims that the affidavit in support of the search warrant should be invalidated because it contains "double hearsay." We agree with the defendant that when the informant's information is based on hearsay, the magistrate should not credit that information unless an independent basis for its reliability is established. See *Spinelli* v. *United States,* 393 U.S. 410, 425, 89 S. Ct. 584, 21 L. Ed. 2d. 637 (1969). In this situation, however, the information received by the affiant was not based on double hearsay from the informant; rather, the defendant claims that there is double hearsay because the informant's information was relayed from Lavery to Riccio. A law enforcement officer, like the general public, "is generally presumed to be reliable, and thus no special showing of such reliabilty . . . is necessary" to establish probable cause. 2 W. LaFave, Search and Seizure (1987) § 3.5 (a); *United States* v. *Ventresca,* supra,

110–11; *United States* v. *Asselin,* 775 F.2d 445 (1st Cir. 1985). Thus, the fact that Riccio received the informant's information from Lavery does not affect the validity of the affidavit, and this claim is without merit.

## II

Finally, the defendant claims that the trial court erred in denying him an evidentiary hearing pursuant to *Franks* v. *Delaware, supra.* Specifically, he claims that the affidavit in support of the search warrant which led to his arrest contained omissions and misstatements of material facts, entitling him to a further evidentiary hearing as to the truthfulness of the warrant, and that the trial court erred when it found that he did not make a sufficient offer of proof pursuant to *Franks.* We are unpersuaded.

In *Franks* v. *Delaware, supra,* 155–56, the United States Supreme Court held that a defendant may challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." If this statement is necessary to the finding of probable cause, "the Fourth Amendment requires that a hearing be held at the defendant's request." Id. The court also stated that "[t]o mandate an evidentiary hearing, the challanger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained . . . . The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." Id., 171.

The evidence in support of the defendant's claim that he was improperly denied a *Franks* hearing is the affidavit of his attorney.[5] We find this affidavit insufficient to mandate an evidentiary hearing pursuant to *Franks*. First, the defendant's attorney did not witness the events he avers to; rather, he states that "upon information and belief [he] determined that Paragraphs 3 and 4 of the affidavit [submitted with this] application for the search warrant [are] false and misleading as to assertions made therein concerning the credibility and reliability of the informer." There is no explanation why proper witnesses and affidavits were not obtained.

Moreover, examination of this affidavit reveals that the allegations made by the defendant's attorney are at best conclusory. For example, he attempts to show

[5] "AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE
(*Franks* v. *Delaware* grounds)

"I, Michael Graham of Hartford, hereby depose and say:

"1. That I am attorney for the defendant Alan Morrill and I have thoroughly investigated the facts, circumstances and law of this case.

"2. That following careful investigation and upon information and belief I have determined that Paragraphs 3 and 4 of the affidavit in application for the search warrant [are] false and misleading as to assertions made therein concerning the credibility and reliability of the informer.

"3. To summarize, the informer is purported to be reliable and credible because he had given information in the past which led to arrests and convictions and a seizure of 32 pounds of marijuana in Newington, Connecticut, and that the informer actually witnessed a marijuana transaction in the defendant's home.

"4. In truth the informer . . . was himself arrested for conspiracy possession of the 32 pounds of marijuana in question and his information which led to other arrests, convictions and searches, [and] seizures involved [the informer] implicating his confederate in the possession and distribution of his 32 pounds of marijuana.

"5. The following information supports the assertions in paragraph 4:

"a. There was only one seizure of 32 pounds of marijuana in Newington in anyone's memory.

"b. Arrested were the informer in this case and another person named [C].

"c. [The informer] thereupon implicated a number of other persons in the conspiracy to possess the 32 pounds. [The informer] had approximately

that the affiants misled the issuing magistrate regarding the informant's track record with the police. In so doing, he suggests that the affiant Riccio's statement that the informant had given the police "information on drug activities that [has] resulted in arrests and convictions including a seizure of 32 pounds of marihuana," was inaccurate. Instead, he avers that the informant here was the defendant in the thirty-two pound marihuana arrest. In support of this argument, he makes bald assertions such as "[t]here was only one seizure of 32 pounds of marijuana in Newington in anyone's memory." Finally, there is no offer of proof that the statements objected to in the affidavit were made by the Windsor officer with knowledge of their falsity or reckless disregard for their truth. As noted above, such a showing is required under *Franks*. See *State* v.

5 pounds of marijuana in his automobile and had sold still another 5 pounds to an informer for the East Hartford police shortly before (or had made arrangements for the sale).

"d. Some charges against [the informer] were not prosecuted and he ultimately received a suspended sentence while [C] was incarcerated.

"e. [The informer] was never in the home of the defendant and they had never met but [the informer] was outside the defendant's home sitting in an automobile while an acquaintance and fellow worker of the defendant's stopped by defendant's home a few days before the search in question.

"f. Thus [the informer] had no 'track record' of reliability as an informer except in regard to implicating others involved in his own arrest or people who he had dealt drugs to.

"g. It is clear that the informer in [the informer and C's] arrest is not the informer in this case as the informer's identity in [the arrest of the informer and C] became known in the course of that case. That informer is absolutely unknown to the defendant in this case; they have never seen or spoken to each other.

"h. The affiants knew or could have known the true facts and status of [the informer] including that he had serious charges pending against him when he provided the information. Thus the affiants intentionally or recklessly set forth misleading and errroneous information in the affidavit in support of the warrant. The false and misleading information and omitted information was material to the issuance of the warrant.

"i. The undersigned counsel has in his possession and will make available to the court copies of the police reports and search warrant application in [the informer and C's] case."

*Stepney,* 191 Conn. 233, 239, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). We find that this offer of proof is insufficient to establish the defendant's right to an evidentiary hearing pursuant to *Franks.*

There is no error.

In this opinion HEALEY, COVELLO and HULL, Js., concurred.

CALLAHAN, J., concurred in the result.