## State of Connecticut *v.* Rufus Smith
### (6067)

Dupont, C. J., Borden and Spallone, Js.

Argued April 5—decision released September 13, 1988

*Ernest J. Diette, Jr.,* special public defender, with whom, on the brief, was *Barry B. Johnson-Fay,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Mary Galvin,* assistant state's attorney, for the appellee (state).

Spallone, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of manslaughter in the first degree in violation of General Statutes § 53a-55.

The defendant claims that the trial court erred (1) by refusing to caution the jury to scrutinize the testimony of a key state's witness because the witness was an accomplice to the crime charged and had a motive to testify falsely, and (2) in its denial of the defendant's motion to suppress evidence seized pursuant to a search warrant. We find no error.

The jury could reasonably have found the following facts. On the morning of March 31, 1986, the defendant was visiting his cousin, Robert Tate, at Tate's house in New Haven. At approximately 1 p.m., the two men left Tate's house to make a heroin purchase. Tate was driving his automobile and the defendant was seated in the front passenger seat. After two unsuccessful attempts to purchase the narcotics in the immediate neighborhood, Tate suggested they try a house located at the corner of James and Wolcott Streets in New Haven. As they approached this intersection, the defendant spotted the victim, Alonzo Jenkins, standing in front of the house that was their point of destination. The defendant instructed Tate to pull over and he thereupon exited the vehicle to confront Jenkins. After Tate exited the vehicle, he overheard the defendant tell Jenkins that he was armed with a gun.

Tate turned away from the two men and headed toward the front porch of the house, still intent on purchasing heroin. As he approached the stairs, he heard a shot. He turned and saw Jenkins and the defendant still talking. The defendant was holding a long silver gun at his side with the barrel pointed downward. Tate yelled at the defendant, fearing the gunshot would arouse suspicion and prevent him from making his drug purchase. Tate again began ascending the porch steps and stopped when he heard a second shot. When he turned back this time, he saw only the defendant, who

shouted, "Let's go," and hurried toward Tate's automobile. Tate returned to the vehicle and the two men quickly left the area.

While Tate was driving from the scene, the defendant stated that he had shot the victim in the leg, and warned that if the victim reported the shooting he would go back and kill him. The two proceeded to the area of Howard and Spring Streets, where they made another unsuccessful attempt to buy heroin. As they were leaving, they noticed a police officer on a motorcycle watching Tate's car. With Tate still driving, they attempted to elude the officer. Tate eventually pulled the vehicle over to the curb at the corner of Putnam and Dewitt Streets, where the defendant left the car and fled through nearby backyards. At that point, the defendant was wearing grey khaki pants and a green checked sweater.

Additional officers soon arrived at the scene, questioned Tate and brought him to the police station. After initially telling the officers that he only knew his passenger by the name "Jamie," Tate informed them that the passenger was, in fact, his cousin, the defendant, and identified him from a photograph. A fingerprint was discovered on the passenger side roof of Tate's car, which was later matched to the defendant's right ring finger.

The victim was found at the scene of the shooting, gasping for air and bleeding from a stomach wound. He was taken to Yale-New Haven Hospital where he was pronounced dead. It was ascertained at the hospital that the victim died of a gun shot wound.

The police secured a warrant for the defendant's arrest but were unable to effectuate an arrest. On April 2, 1986, two days after the shooting, Detectives Leroy Dease and Joseph Reynolds applied to the Superior Court for a search and seizure warrant. They

sought to enter the defendant's apartment to arrest him, and to search for the long, silver handgun, the gray khaki pants and the checked sweater. The warrant was executed the following day, at which time the officers seized one box of .38 caliber special bullets, two "wad cutters" and two pistol grips.

The defendant was eventually apprehended and charged with murder. At trial, the jury acquitted the defendant of the charge of murder, but found him guilty of the lesser included offense of manslaughter in the first degree.

## I

The defendant's first claim of error involves the trial court's refusal to instruct the jury in accordance with the defendant's request to charge. The defendant claims that, on the basis of Tate's testimony elicited at trial, he was entitled to have the jury instructed to examine Tate's credibility closely on the grounds that Tate was an accomplice to the crime committed and also because Tate had criminal charges stemming from that incident pending against him. We disagree.

Tate had been initially charged with murder but, upon further investigation, the state reduced the charge to one of hindering prosecution. On direct examination, Tate acknowledged that this charge was still pending and testified that he had not been made any promises by the state regarding that charge in exchange for his testimony against the defendant. Tate was questioned closely on this point during cross-examination and the defendant focused on both the reduction of the initial charge and Tate's possible hopes for leniency. On redirect and recross-examination, Tate reiterated that there was no bargain struck to reduce the initial charge nor any understanding regarding the disposition of the hindering prosecution charge.

We address first the claim that Tate's status as an accomplice to the shooting should have been brought to the jury's attention.

" 'The well-settled rule in this state regarding the testimony of an accomplice is that "where it is warranted by the evidence, it is the *court's duty* to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if he assisted or aided or abetted in the commission, of the offense with which the defendant is charged." (Emphasis in original.) *State* v. *Ferrara,* 176 Conn. 508, 512, 408 A.2d 265 (1979); *State* v. *Colton,* 174 Conn. 135, 140, 384 A.2d 343 (1977).' *State* v. *Shindell,* 195 Conn. 128, 142, 486 A.2d 637 (1985)." *State* v. *Edwards,* 201 Conn. 125, 156, 513 A.2d 669 (1986). We conclude that under the facts and circumstances of this case, the evidence did not warrant the defendant's characterization of Tate as an accomplice.

At best, Tate's testimony indicated that he drove the defendant to the scene of the shooting with the intention of making a drug purchase, that he was nearby when the shooting occurred and that he drove the defendant away from the scene after the shooting. These facts, in comparison with the underlying circumstances of those cases where an accomplice charge was warranted, reveals the deficiencies in the defendant's argument. In *State* v. *Edwards,* supra, the witness had already pleaded guilty to being an accomplice to the defendant's crime; in *State* v. *Colton,* supra, the witness testified that he had committed arson at the defendant's request and had pleaded guilty to charges brought against him stemming from that act; and in *State* v. *Shindell,* supra, the witness had testified as to his part in an arson conspiracy with the defendant and acknowledged that various charges were then pending against him as a result of that conspiracy.

In *State* v. *Ferrara,* supra, our Supreme Court found no error in the giving of an accomplice charge "even though [the witness] was not charged with aiding or abetting and did not admit that he committed the offense with which he was charged . . . ." Id., 512–13. The *Ferrara* court based its decision, however, on the following evidence adduced at the trial: that the homicide victim had stabbed the witness' brother moments before his own death and, therefore, the witness had a reason to attack the victim himself; that the victim, the witness and the defendant were at the scene of the crime together; that the witness had the victim's blood on his clothing; that the witness had threatened to kill the victim; and that the witness was seen running away from the scene of the crime. Id., 512.

The facts of the present case reveal neither an admission by the witness of his complicity in the shooting nor evidence as forceful as that adduced in *Ferrara* to warrant the requested instruction. See *State* v. *George,* 194 Conn. 361, 375, 481 A.2d 1068 (1984). The trial court did not err in determining that the evidence did not warrant the charge.[1]

The defendant's second claim, that a special cautionary instruction regarding Tate's motive, interest or bias should have been given, is also without merit. The defendant relies on *State* v. *Cooper,* 182 Conn. 207, 438 A.2d 418 (1980), wherein the court held that "the [trial] court should have instructed the jury in substantial compliance with the defendant's request to charge to determine the credibility of [the] witness in the light of any motive for testifying falsely and inculpating the

[1] The trial court was also aware of the fact that the state's attorney's office believed that the evidence was insufficient to prosecute Tate as an accomplice to the crime. During the trial, outside of the presence of the jury, the prosecuting attorney stated that "there was no deal for the reduction of the charge [initially brought against Tate]. That was done unilaterally by the prosecution, because at best, that's the charge that fit, at best."

accused." Id., 211–12. The court then "emphasize[d], however, that in order for the request to be applicable to the issues in the case, there must be evidence . . . to support the defendant's assertion that *the complaining witness* was the culpable party." (Emphasis added.) Id., 212. Furthermore, the court stated that "the defendant is entitled to such an instruction only where it is requested with regard to a complaining witness who could himself be subject to prosecution depending upon the veracity of his version of the particular criminal transaction involved." Id., 212 n.5. *Cooper's* limited holding was recently reaffirmed in *State* v. *George,* supra, 374.

Because Tate was not a complaining witness, the defendant was not entitled to the requested charge and the trial court did not abuse its discretion by refusing to so instruct the jury.[2]

## II

We need not discuss at length the defendant's claim that the trial court erred in denying the defendant's motion to suppress evidence which he alleged was seized pursuant to an improperly issued search warrant. The defendant challenges the warrant on the grounds that the information contained in the application and accompanying affidavit was insufficient to support a finding of probable cause as required by *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). Although we agree with the defendant that the two-prong *Aguilar-Spinelli* test which was reaffirmed in *Kimbro* is applicable to the probable cause determina-

[2] The court did instruct the jury concerning the general credibility of witnesses and cautioned them to "consider any possible bias or prejudice that [a witness] may have whether for or against the state, or for or against the accused [and his] or her lack of interest, or interest of whatever sort, in the outcome of the trial." The court also gave a specific instruction as to Tate's credibility with regard to his previous felony convictions. Under the specific facts of this case, we find these instructions to be adequate.

tion at hand,[3] we disagree with his argument that the requirements were not sufficiently met.

" 'The *Aguilar-Spinelli* test for reviewing a magistrate's finding of probable cause consists of two prongs: " 'The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable.' " *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984), [quoting] *State* v. *Jackson,* 162 Conn. 440, 446, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).' *State* v. *Morrill,* 205 Conn. 560, 566, 534 A.2d 1165 (1987)." *State* v. *Tulli,* 14 Conn. App. 356, 358–59, 541 A.2d 515 (1988).

The defendant argues that the affidavit submitted by Dease and Reynolds was inadequate in that it did not address the veracity and the basis of knowledge of those individuals who had provided information to the detectives. The defendant then offers as support for his argument a myriad of cases concerning the use of information supplied by confidential informants in a search warrant application.

The defendant's claim fails in that none of the information contained in the supporting affidavit was obtained from a confidential informant. The detectives investigating the killing of Jenkins compiled their

---

[3] *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Under article first, § 7, of our state constitution, a finding of probable cause must conform to the *Aguilar-Spinelli* two-prong analysis regardless of whether it is a warrantless search; *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985); or a search made pursuant to a warrant. *State* v. *Morrill,* 205 Conn. 560, 565–66, 534 A.2d 1165 (1987).

information from eyewitnesses to the crime, from the defendant's wife, from other police officers and from one other individual, named in the affidavit, who came forward to report having recently seen the defendant. The short answer to this issue is that when dealing with information obtained from a victim, a witness or a fellow police officer, no special showing of reliability is required. See, e.g., *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, reh. denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 (1970); *Jaben* v. *United States,* 381 U.S. 214, 85 S. Ct. 1365, 14 L. Ed. 2d 345 (1965); *State* v. *Telesca,* 199 Conn. 591, 603, 508 A.2d 1367 (1986); *State* v. *Amarillo,* 198 Conn. 285, 310, 503 A.2d 146 (1986); *State* v. *Daley,* 189 Conn. 717, 723-24, 458 A.2d 1147 (1983). "Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen who has found himself in the position of a crime victim or witness. . . . Basis of knowledge is likewise less of a problem in the victim-witness cases, for by definition the victim or witness is reporting first-hand knowledge." 1 W. LaFave, Search and Seizure—A Treatise on the Fourth Amendment § 3.4, pp. 586–87; id., § 3.5 (information held by other police).

Applying the correct test to the warrant application presented to the trial court, we cannot say that it erred in finding the warrant contained sufficient information to establish probable cause.[4] "Each case must be tested

---

[4] The defendant's confusion regarding the correct standard to be applied to a review of the affidavit may stem from the detectives' failure to name each of the eyewitnesses who provided them with information. Although we can easily state that the failure to name each witness did not transform them into "confidential informants," we do acknowledge that under some circumstances this failure may require a showing closer to that mandated for confidential informants. See 1 W. LaFave, Search and Seizure—A Treatise on the Fourth Amendment § 3.4 (a), pp. 722–25. We conclude that in this case, because the affidavit stated that the witnesses had provided

on its own when determining whether sufficient indicia of facts and circumstances exist to support the judge's finding of probable cause and his ultimate decision to issue the warrant . . . and that finding of probable cause 'should be paid great deference by reviewing courts.' *State* v. *Just*, [185 Conn. 339, 369, 441 A.2d 98 (1981)] . . . ." (Citations omitted.) *State* v. *Tulli*, supra, 362.

There is no error.

In this opinion the other judges concurred.

sworn statements to the detectives and that their information had been successfully used to obtain a warrant for the defendant's arrest, the reviewing magistrate had sufficient indicia to conclude that the witnesses were not anonymous and that their statements were reliable.